## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**TRACY L. COLLIER,**
        **Petitioner,**

**v.**                                            **Case No.  5:06cv172/MCR/MD**

**WALTER A. MCNEIL,**[1]
        **Respondent.**

_____

## ORDER and
## REPORT AND RECOMMENDATION

Before the court is a second amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  (Doc. 26).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 31).  Petitioner has filed a reply.  (Doc. 36).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

_____

[1]Walter A. McNeil succeeded James R. McDonough as Secretary of the Florida Department of Corrections, and is automatically substituted as the respondent.  Fed.R.Civ.P. 25(d)(1).

## BACKGROUND AND PROCEDURAL HISTORY

On December 19, 2001 petitioner was convicted upon jury verdict of Escape in the Circuit Court of Bay County, Florida, Case Number 01-1454.  (Doc. 31, Ex. A-1, p. 34).  He was sentenced on January 28, 2002 to 25 years imprisonment as an habitual offender to be served consecutively to any active sentence being served.  (*Id.*, pp. 41-51).

Petitioner appealed.  His appeal was assigned case number 1D02-480.  On December 18, 2003 the Florida First District Court of Appeal ("First DCA") affirmed petitioner's conviction and sentence.  *Collier v. State*, 864 So.2d 63 (Fla. Dist. Ct. App. 2003) (copy at Ex. E).  Petitioner's motion for rehearing was denied on January 26, 2004.  (*Id.*).

On July 30, 2004 petitioner filed a motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. F-2, pp. 1-32).  The trial court denied relief, and petitioner appealed.  (*Id.*, pp. 56-57).  The appeal was assigned case number 1D05-4550.  On February 15, 2006 the First DCA affirmed the denial order without written opinion.  *Collier v. State*, 924 So.2d 813 (Fla. Dist. Ct. App. 2006) (Table) (copy at Ex. F-1).  The mandate issued March 3, 2006.

On June 9, 2006 petitioner filed a petition for writ of habeas corpus in the First DCA, alleging ineffective assistance of appellate counsel.  The First DCA denied the petition on July 12, 2006.  *Collier v. State*, 933 So.2d 1221 (Fla. Dist. Ct. App. 2006) (citing Fla. R. App. P. 9.141(c)(4)(B)) (copy at Ex. G).

Petitioner filed the instant federal habeas petition on August 14, 2006.  (Doc. 1).

## DISCUSSION

### Standard of Review

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to

the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established

---

[2]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

**Federal law, as determined by the Supreme Court of the United States."
Under the "contrary to" clause, a federal habeas court may grant the
writ if the state court arrives at a conclusion opposite to that reached
by this court on a question of law or if the state court decides a case
differently than this Court has on a set of materially indistinguishable
facts.  Under the "unreasonable application" clause, a federal habeas
court may grant the writ if the state court identifies the correct
governing legal principle from this Court's decisions but unreasonably
applies that principle to the facts of the prisoner's case.**

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); *Ramdass v. Angelone*, 530 U.S.
156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the
Supreme Court has instructed that, on any issue raised in a federal habeas petition
upon which there has been an adjudication on the merits in a formal State court
proceeding, the federal court should first ascertain the "clearly established Federal
law," namely, "the governing legal principle or principles set forth by the Supreme
Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538
U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly
established" if Supreme Court precedent at the time "would have compelled a
particular result in the case."  *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998),
*overruled on other grounds by Parker v. Head*, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is
contrary to the clearly established Supreme Court case law, either because "'the
state court applies a rule that contradicts the governing law set forth in [the
Supreme Court's] cases' or because 'the state court confronts a set of facts that are
materially indistinguishable from a decision of th[e] [Supreme] Court and
nevertheless arrives at a result different from [Supreme Court] precedent.'"  *Lockyer*,
538 U.S. at 73 (quoting *Williams*, 529 U.S. at 405–06).  The Supreme Court has
clarified that "[a]voiding these pitfalls does not require citation to our
cases—indeed, it does not even require awareness of our cases, so long as neither
the reasoning nor the result of the state-court decision contradicts them."  *Early v.
Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting *Williams*,

529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

       If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  *Williams*, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it.  *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).  The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion."  *Williams*, 529 U.S. at 410–12.

       Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified

that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g. Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); *Jones v. Walker*, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti v. Quarterman*, --- U.S. --- 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); *Jones*, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

<u>Exhaustion and Procedural Default</u>

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C.

§ 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan, supra*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Picard*, 404 U.S. at 277-78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In *Picard v. Connor*, *supra*, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.* at 278, 92 S.Ct. at 513, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

---

[3]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

  (A)  the applicant has exhausted the remedies available in the courts of the State; or

  (B) (i)  there is an absence of available State corrective process; or

     (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  In *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  *Id.* 459 U.S. at 7, 103 S.Ct. at 278 (citing *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)).  The only manner in which the habeas petitioner had cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  *Anderson*, 459 U.S. at 7, 103 S.Ct. at 278 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the <u>cited</u> case advanced a federal claim.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  459 U.S. at 7 and n. 3, 103 S.Ct. at 278 and n. 3.

Years later, the Supreme Court readdressed the "fair presentation" requirement in *Duncan v. Henry*, *supra*.  The *Duncan* Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process

---

[4]The petitioner in *Duncan* raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal. Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." *Duncan*, 115 S.Ct. at 888.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that  "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004).  The *Baldwin* Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  *Id.*  This language, while not part of the Court's holding, provides an instructive and useful rule of thumb.  With regard to this statement, the Eleventh Circuit stated in *McNair v. Campbell*, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  *McNair* [*v. Campbell*], 315 F. Supp. 2d at 1184 (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

*Id.*, 416 F.3d at 1302-03 (citations omitted).[5]

---

[5]In his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." *McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not

The Eleventh Circuit, prior to *Duncan*, had broadly interpreted the "fair presentation" requirement.[6]  However, after *Duncan*, the Eleventh Circuit has taken a more restrictive approach.  For example, in *Zeigler v. Crosby*, the Circuit Court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the Federal Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003).  The court specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause. *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.,* procedurally barred from federal review.  *O'Sullivan*, 526 U.S. at 839-40, 848, 119

---

sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. *Id.*

[6]*See, e.g., Watson v. Dugger*, 945 F.2d 367 (11th Cir. 1991) (finding issue to be exhausted when petitioner argued in state court that trial court misapplied state law when it refused to give petitioner's requested jury instruction and thereby allowed the jury to convict without necessary showing of criminal intent, and argued in federal court that this was a due process violation); *Mattox v. Dugger*, 839 F.2d 1523 (11th Cir. 1988) (holding that a federal habeas corpus petition should not be dismissed on grounds of procedural default when a petitioner has previously brought an issue before a state court alleging only state law violations, when such a claim is equally supported by federal law, and the state cites such federal law in support of its position); *Hutchins v. Wainwright*, 715 F.2d 512, 518-19 (11th Cir. 1983) (petitioner exhausted Sixth Amendment confrontation clause claim in state court by raising hearsay objections, even though petitioner never raised Sixth Amendment claim in state court).

S.Ct. at 1734; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey*, 172 F.3d at 1303. In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L.Ed.2d 820 (2002). The adequacy requirement has been interpreted to mean that the rule must be firmly established and regularly followed, that is, not applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001), or in a manifestly unfair manner. *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. *Tower*, 7 F.3d at 210; *Parker*, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497,

111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  *Tower v. Phillips, supra.* To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 85, 130 L.Ed.2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  *Schlup*, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

**Petitioner's Grounds for Relief**

Ground A.   **"Court Committed Fundamental Error In Failing To Instruct The Jury On The Essential Element Of Intent In The Offense Of Escape."**

Petitioner contends the trial court's instructions to the jury omitted any reference to intent, an essential and disputed element of the crime of escape, thereby denying petitioner "fundamental fairness and due process of law." (Doc. 26, p. 7).  Petitioner states he exhausted this claim by raising it on direct appeal. Respondent asserts this claim is procedurally defaulted because petitioner's presentation of the jury instruction issue to the state appellate court did not fairly apprise that court of the federal nature of his claim.  (Doc. 31, pp. 3-4).  Respondent is correct.

The substance of petitioner's argument on direct appeal was that the trial judge "reversibly erred" when he failed to instruct the jury on the element of intent. In support of his argument, petitioner relied exclusively on state cases which defined the elements of escape under Florida law.  (Ex. B, pp. 16-17).  He urged the

court to address his claim despite his failure to contemporaneously object at trial, arguing as follows:

> In a criminal proceeding, few errors bear more directly on the "foundation" of the case than the complete omission of an instruction on an element of the offense.  Although Appellant did not object to the trial court's instructions to the jury regarding intent, the error in failing to instruct the jury on this essential and disputed element of the offense constitutes a violation of due process and, therefore, fundamental error.

(Ex. B, p. 17).  The foregoing was petitioner's sole reference to "due process." Petitioner went on to discuss two state cases which addressed whether an erroneous jury instruction constituted "fundamental error" which would justify overriding the contemporaneous objection rule.  (*Id.*, p. 17 (discussing *State v. Delva*, 575 So.2d 643 (Fla. 1991); *Reed v. State*, 837 So.2d 366 (Fla. 2002)).  These cases made no mention of the United States Constitution and cited no federal cases. Petitioner closed his argument by noting that "fundamental error is not subject to harmless error review."  (Ex. B, p. 19).  Petitioner did not claim that the alleged improper jury instruction deprived him of his federal constitutional rights, rendered his trial fundamentally unfair, or violated any other right under federal law.

The First DCA concluded that the jury was adequately instructed regarding the intent element and, therefore, there was no fundamental error as to the issue.  *Collier v. State*, 864 So.2d 63 (Fla. Dist. Ct. App. 2003) (copy at Ex. E).  The state court's ruling was based exclusively on a state law case, *Howell v. State*, 503 So.2d 409 (Fla. Dist. Ct. App. 1987), which held that a similar escape instruction sufficiently articulated the elements of escape as set forth in section 944.40, Florida Statutes, even though it deviated from the standard jury instruction.

In light of *Duncan v. Henry, supra*, and *Zeigler v. Crosby*, *supra*, the undersigned concludes that petitioner did not properly present to the state court his present constitutional challenge to the jury instruction.  As any attempt to return to state court to do so would be procedurally barred, this claim is procedurally

defaulted.   Petitioner has made none of the requisite showings to excuse his default.[7]  This default bars federal habeas review of Ground A.

      **Ground B.**   **"Court Erred Denying Petitioner's Motion To Strike Juror(s) And Abuse of Discretion And Court Denied Right To Fair And Impartial Jury."**

      Petitioner claims the trial court abused its discretion, "deprived [him] of a fair trial, and denied him of his right to a fair and impartial jury" when the judge denied his challenges for cause to two jurors (jurors Mulligan and Lloyd), thereby allowing partial jurors to sit on the panel.  (Doc. 26, p. 7).  Petitioner states he exhausted this claim by raising it on direct appeal.  (*Id.*, p. 8).  Respondent asserts this claim is procedurally defaulted because petitioner's presentation of this issue to the state appellate court did not fairly apprise that court of the federal nature of his claim.  (Doc. 31, p. 6).  Respondent is correct.

      The substance of petitioner's argument on direct appeal was that the trial judge "erred" when he denied petitioner's motion to strike jurors Mulligan and Lloyd for cause, "resulting in a denial of appellant's right to a fair and impartial jury."  (Ex. B, p. 20).  In support of his argument, petitioner relied exclusively on state cases defining the rule applicable to excusing a juror for cause.  (Ex. B, pp. 21-22).  One of those state cases, *Singer v. State*, 109 Fo.2d 7 (Fla. 1959), cited  another state case, *Blackwell v. State*, 132 So. 468, 470 (Fla. 1931), which in turn quoted two federal cases for the proposition that the question of a juror's competency is a question of mixed law and fact, and that a trial judge's decision concerning the competency of a challenged juror should not be disturbed unless error is manifest.  Petitioner closed his argument by discussing a state court case which held that "it is reversible error for a court to force a party to use peremptory challenges on persons who should have been excused for cause. . . ."  (Ex. B, p. 26) (citing *Hill v. State*, 477

---

[7]In his reply, petitioner states that his direct appeal brief fairly presented a federal claim, and that he did not personally object to the jury instruction at trial because he was medicated and drowsy. (Doc. 36, pp. 1-10).  This does not establish cause for his default.  Moreover, although petitioner attempts to make a substantive claim of actual innocence in Ground D of this petition, the "newly discovered evidence" upon which he relies does not make a colorable showing that he is factually innocent of the crime of escape.  Nor does the purported "newly discovered evidence" raised in Ground N.  *See* discussions of Grounds D and N, *infra*.

So.2d 553, 556 (Fla. 1985)).  Petitioner did not claim that the trial court's denial of his challenges for cause deprived him of his federal constitutional rights, rendered his trial fundamentally unfair, or violated any other right under federal law.

The First DCA resolved petitioner's claim as to juror Lloyd on state law grounds, holding that "the record contains insufficient evidence to conclude that the judge abused his discretion by refusing to excuse Lloyd for cause." *Collier v. State*, 864 So.2d 64 (Fla. Dist. Ct. App. 2003) (copy at Ex. E).  The state court found that petitioner's challenge to juror Mulligan was not preserved for review because petitioner did not renew his objection to the ruling on Mulligan or accept the jury subject to his previous objections.  *Id.*, at 63 (citing *Ault v. State*, 866 So.2d 674, 683 (Fla. 2003))

As in the case of Ground A, *supra*, this court concludes that petitioner did not properly present to the state court his present constitutional challenge concerning the failure to excuse jurors Mulligan and Lloyd.  *See Howell v. Mississippi*, 543 U.S. 440, 443-44, 125 S.Ct. 856, 858-59, 160 L.Ed.2d 873 (2005) (holding that petitioner did not properly present his claim in state court as one arising under federal law where in the relevant argument, petitioner did not cite the Constitution or even any cases directly construing it, but presented a daisy chain of citations, only the last of which concerned a federal claim); *Duncan v. Henry, supra*; *Ziegler v. Crosby, supra*.  As any attempt to return to state court to do so would be procedurally barred, this claim is procedurally defaulted.  Petitioner has made none of the requisite showings to excuse his default.  This default bars federal habeas review of Ground B.

Ground C.    "Denial Of Defendant's Right To Conflict-Free Counsel Was Abuse Of Discretion By Court And Defendant Was Denied Right To Counsel."

In this ground for relief petitioner claims he was denied conflict-free counsel, explaining:

Counsel was not appointed but volunteered to take defendant's case, and had in prior proceeding kept defendant from collecting favorable evidence, having alibi defense and did inform State Assistant Attorney Smoak that defendant was recent releasee from prison and had the State pursue the status which caused the defendant to be

**designated as Prison Releasee and had to serve 100% of sentence, which court knew.**

(Doc. 26, p. 8).  Petitioner asserts he exhausted this claim by raising it in his Rule 3.850 motion.  (*Id.*).  Respondent contends this claim is procedurally defaulted. (Doc. 31, pp. 6-9).  Respondent is correct.

Petitioner raised this claim in his Rule 3.850 motion.  The court denied relief, noting initially that petitioner represented himself with the public defender as standby counsel.  (Ex. F-2, p. 56).  The court then found petitioner's claim concerning the denial of conflict-free counsel procedurally barred because it could and should have been raised on direct appeal but was not.  The court went on to note that the claim was without merit.  (*Id.*, pp. 56-57).  The appellate court affirmed the denial order without written opinion.  *Collier v. State*, 924 So.2d 813 (Fla. Dist. Ct. App. 2006) (Table) (copy at Ex. F-1.  The state court relied on the procedural bar as an independent basis for its decision.  The procedural bar is an adequate ground for the state court's denial of relief, because it is firmly established and regularly followed in cases such as petitioner's.  *LeCroy v. Secretary, Florida Dep't of Corrections*, 421 F.3d 1237, 1260 (11th Cir. 2005) ("As this Court has concluded, if . . . the claim could have been raised [on direct appeal], but was not, it would be barred from any state collateral review, and likewise barred from federal review.") (alternation in original) (internal quotations marks omitted); *see also Bell v. State*, 965 So.2d 48, 60 (Fla. 2007) (finding claim procedurally barred as a post-conviction claim because it could have been raised on direct appeal); *Teffeteller v. State*, 734 So.2d 1009, 1016 (Fla. 1999) (holding that substantive claims raised by post-conviction relief movant were procedurally barred because they could have been raised on direct appeal); *Koon v. Dugger*, 619 So.2d 246, 247 (Fla. 1993) (holding that claims which either were or could have been raised on direct appeal are procedurally barred from review in a Rule 3.850 motion); *Smith v. State*, 445 So.2d 323, 325 (Fla. 1983) (holding that, "[i]ssues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack.").  Therefore, this court should consider the claim procedurally defaulted.

Petitioner has made none of the requisite showings to excuse the default.  This default bars federal habeas review of Ground C.

> **Ground D.**   **"Defendant Was Charged With A Crime He Did Not Commit And His Conviction Is Contrary To Clearly Unreasonable Application Of Law."**

At the time petitioner escaped (June 7, 2001), he was in custody awaiting sentencing on his conviction of lewd and lascivious battery on a child less than 16. In this ground for relief, petitioner asserts that he is "actually innocent" of escape for the following reason:

> **Defendant contends he is actually innocent due to there being no legitimate  initial arrest one that is in accordance with law.  The alleged victim has reported that she lied about having sex with defendant and recanted her recantation only due to threats by the state attorney to prosecute her if she did not maintain the fabrication and such is a heinous miscarriage of justice.**

(Doc. 26, p. 8).  Petitioner admits that he has not presented this claim to the state courts, explaining that he learned of the factual basis of this claim on February 2, 2007 through "the alleged victim's letter and now present the argument before this court."  (*Id.*).

In essence, petitioner is attempting to use newly discovered evidence of his innocence of the lewd battery to support a freestanding claim of actual innocence of the escape.   However, petitioner cannot maintain, much less prevail on, a freestanding actual innocence claim.  The United States Supreme Court has held that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. . . . This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution -- not to correct errors of fact."  *Herrera v. Collins*, 506 U.S. 390, 400, 113 S.Ct. 853, 860, 122 L.Ed.2d 203 (1993); *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002) ("It is not our role to make an independent determination of a petitioner's guilt or innocence based on evidence that has emerged since trial.").

Further, even assuming *arguendo* that petitioner presented a cognizable actual innocence claim, his purported new evidence does not remotely suggest he is factually innocent of escape. The "custody" element of the crime of escape requires the State to prove beyond a reasonable doubt that petitioner was in the lawful custody of a law enforcement official. As the court instructed the jury, "a prisoner held in custody by order of a judge awaiting sentencing and confined to the Bay County Jail operated by C.C.A. is in the custody of a law enforcement official." (Ex. A-4, p. 193). The lewd battery victim's alleged recantations in December of 2001 and March of 2007 do not remotely suggest that petitioner was not being held in custody by order of a judge awaiting sentencing and confined to the Bay County Jail at the time of his escape in June of 2001.

Moreover, the state court has already considered the 2001 recantation by the victim, and rejected it. Indeed, petitioner admits that at an evidentiary hearing on the 2001 recantation, the victim testified that her trial testimony was truthful and her recantation letter false. (Doc. 26, p. 9). The issue of the victim's 2001 and 2007 recantations was raised and rejected by this court in petitioner's federal habeas proceeding challenging his lewd battery conviction. *Collier v. McDonough*, Case Number 5:06cv187/RH/AK (*See* Doc. 1, Ground 5; Doc. 31, Ex. Q; Doc. 36, pp. 18-19). In light of all of the foregoing, petitioner is not entitled to federal habeas relief on Ground D.

Ground E.  "Petitioner Denied His Sixth Amendment Right To Counsel Fundamental Fairness, His Fourteenth Amed [sic] Right And Right To Due Process, When Court Failed To Determine On The Record That Petitioner Was Competent To Waive His Right To Counsel And Did So Knowingly And Intelligently Being Under The Influence Of Psycho Meds."

Petitioner contends several constitutional rights were violated because the state trial court "held an inadequate inquiry to determine if defendant knowingly and intelligently waived his right to counsel." (Doc. 26, pp. 10-15). Petitioner asserts he

exhausted this claim by raising it in his Rule 3.850 motion.  Respondent asserts the claim is procedurally defaulted.  Respondent is correct.[8]

Petitioner raised this claim in his Rule 3.850 motion.  The state court denied relief, finding the claim procedurally barred because it could and should have been raised on direct appeal but was not.  (Ex. F-2, p. 56) (citing *Downs v. State*, 740 So.2d 506 (Fla. 1999)).  It went on to note that the claim was without merit.  (*Id.*).  The appellate court affirmed the denial order without written opinion.  *Collier v. State*, 924 So.2d 813 (Fla. Dist. Ct. App. 2006) (Table) (copy at Ex. F-1).  The state court relied on the procedural bar as an independent basis for its decision.  The procedural bar is an adequate ground for the state court's denial of relief, because it is firmly established and regularly followed in cases such as petitioner's.  *Downs*, 740 So.2d at 509 nn. 4, 5 (holding that issue of whether trial court failed to conduct adequate inquiry under *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) was procedurally barred from review in petition for post-conviction relief, where issue could and should have been raised on direct appeal).  Therefore, this court should consider the claim procedurally defaulted.  Petitioner has made none of the requisite showings to excuse the default; therefore, the court will not review this claim.

F.    "State Committed Reversible Error Due To Prosecutorial Misconduct When Assist State Attorney Knowingly Used Perjured Testimony To Secure A Conviction. Violation Of Due Process, Fundamental Fairness And Violated Brady Precedent Which Is Contrary To Supreme Court Law."

This claim is a variation of Ground D above.  Petitioner alleges that he received the lewd battery victim's first recantation letter on December 3, 2001, and that on December 12, 2001 the victim met with the state attorney and confirmed that

---

[8]The undersigned is aware that the law of this circuit provides that a substantive due process mental competency claim cannot be procedurally defaulted.  *See Wright v. Secretary for Dep't of Corrections*, 278 F.3d 1245, 1258-59 (11th Cir. 2002); *Johnston v. Singletary*, 162 F.3d 630, 637 (11th Cir. 1998); *Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1985); *Adams v. Wainwright*, 764 F.2d 1356, 1369 (11th Cir. 1985).  However, here petitioner is not claiming that he was tried while mentally incompetent in violation of his substantive due process rights.  He is claiming that the trial court failed to perform an adequate *Faretta* inquiry.

she and petitioner had not had sex.  According to petitioner, the state attorney threatened the victim with jail if she recanted, and that is why the victim "recanted her recantation" at the evidentiary hearing.  Petitioner states he learned of the state attorney's threat in 2007 when he received the victim's second recantation letter. (Doc. 26, pp. 16-21).  Petitioner claims that the state attorney's failure to disclose the substance of the December 12, 2001 meeting (the victim's statement and the state attorney's threat) violated *Brady* because it shows he is actually innocent of the lewd battery and therefore that he was not in "lawful" custody at the time of his escape. According to petitioner, "with the knowledge of the recantation and the reported threats made by State, to a jury there is a reasonable possibility the outcome would have been different and affected by its admission."  (Doc. 26, p. 18).  Respondent contends this claim is procedurally barred and without merit for the reasons stated in Ground D, *supra*.  (Doc. 31, pp. 15-16).

Regardless of the procedural posture of this claim, petitioner's allegations do not establish a *Brady* violation.  In *Brady*, the United States Supreme Court wrote that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment."  *Brady*, 373 U.S. at 87, 83 S.Ct. 1194.  But, evidence is only material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).  Petitioner's "evidence" that the lewd battery victim was pressured with threats to not recant her testimony does not remotely suggest that petitioner was not being held in custody by order of a judge awaiting sentencing and confined to the Bay County Jail at the time he escaped.  Therefore, this claim does not warrant federal habeas relief.

G.    "Court Erred By Not Renewing Offer To Criminal Defendant At Each Stage Of Proceedings, Where During Post-Trial Motion On A Pro Se Motion For New Trial Was Filed By Defendant And Court Did Not Make Offer Of Counsel To Defendant, Violating His Guaranteed Right To Counsel As Sixth Amend. Demands And Denied Him A Fair Trial."

Petitioner claims the court erred and denied him a fair trial by not renewing the offer of counsel for post trial motions.  (Doc. 26, p. 21).  Petitioner asserts he exhausted this claim by raising it in his Rule 3.850 motion.  Respondent asserts the claim is procedurally defaulted.  (Doc. 31, pp. 7-9, 16).  Respondent is correct.

Petitioner raised this claim in his Rule 3.850 motion.  The state court denied relief, noting initially that petitioner represented himself with the public defender as standby counsel.  (Ex. F-2, p. 56).  The court then found petitioner's claim concerning the non-renewal of counsel procedurally barred because it could and should have been raised on direct appeal but was not.  The court went on to note the claim was without merit. (*Id.*).  The appellate court affirmed the denial order without written opinion. *Collier v. State*, 924 So.2d 813 (Fla. Dist. Ct. App. 2006) (Table) (copy at Ex. F-1).  The state court relied on the procedural bar as an independent basis for its decision.  The procedural bar is an adequate ground for the state court's denial of relief, because it is firmly established and regularly followed in cases such as petitioner's.  *Bell v. State, supra*; *Teffeteller v. State, supra*; *Koon v. Dugger, supra*; *Smith v. State, supra*.  Therefore, this court considers  the claim procedurally defaulted.  Petitioner has made none of the requisite showings to excuse his default.  This default bars federal habeas review of Ground G.

H.    "**Court Erred By Violating Petitioner['s] Sixth Amend. Right By Not Providing Petitioner With Conflict-Free Counsel, Thereby It Offered No Counsel. Violating Sixth and Fifth Amend. Fundamental Fairness, Due Process Right And Abuse of Discretion.**"

As respondent points out, this is the same claim raised in Ground C, *supra*, except with more factual elaboration.  Because petitioner procedurally defaulted this claim and has made none of the requisite showings to excuse his default, this court will not review it.

I.    "**Counsel Was Ineffective Failing To Inform Court Of Petitioner's Psychiatric Conditions To Court When It Made Him His Own Counsel Prior To Being Removed.  Counsel Did Fall Below the Strictland [sic] Measure And Denied Due Process Rights To Defendant And Sixth Amendment.**"

Petitioner claims counsel was ineffective for failing to inform the court of her client's "psychiatric conditions" during the *Faretta* inquiry concerning petitioner's decision to proceed *pro se*. (Doc. 26, p. 24). Specifically, petitioner contends he made counsel aware of his "mental history," including the following: "that stressful situations brought about certain mental challenges dealing with his personality and that he was diagnosed as being clinically depressed also as a paranoid schizophrenic which she confirmed and was informed the type of medications defendant was prescribed by mental health [referring to petitioner's medical records at the jail]." (*Id.*). Petitioner asserts that had counsel informed the court that petitioner was "under mental health perscribed [sic] medications," the court would not have allowed petitioner to represent himself. (*Id.*, p. 25). Petitioner also faults counsel for failing to present evidence during trial, in her role as standby counsel, that petitioner failed to present. (*Id.*, p. 25). Respondent contends this is not the same claim petitioner raised in state court; therefore, it is procedurally defaulted. (Doc. 31, pp. 16-20).

Petitioner presented the first portion of this claim to the state court, but he did not present the latter concerning counsel's failure to supplement petitioner's presentation of evidence. In petitioner's Rule 3.850 motion, he asserted the following claim: "Counsel was ineffective for failing to bring defendant's psychiatric condition to court's attention prior to being dismissed." (Ex. F-2, p. 29). In support thereof, petitioner alleged the following:

> The defendant in the instant case was not mentally competent to represent himself where defendant had mental confussion [sic], due to having prior to trial, suffered an assualt [sic] on behalf of Jail correction officers, having sustained injury to his head, causing temporary blackouts, and loss of memory durring [sic] the pretrial proceedings and post trial, and counsel never informed the Court of these factors which did make trial a useless charade.

> Counsel never informed Court that defendant had a history for mental illness having been previously treated for manic depression and at the time of trial, defendant was under the influence of medications, Zolef [sic], Haldol, and Trazdoline [sic].

> Under said conditions it was impossible for defendant to have
> pro se represented himself, and the attorney was aware of defendant's
> mental and physical disabilities and never informs Court of the
> conditions.

(*Id.*).  Thus, the first aspect of the ineffective assistance claim presented to this court
is subject to merits review, but the latter portion is not because it is procedurally
defaulted.

### A.    Clearly Established Federal law

In order to prevail upon a claim of ineffective assistance of counsel, the
petitioner must prove that:  (1) "counsel's representation fell below an objective
standard of reasonableness," and (2) "there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding would have been
different."  *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d
674 (1984).   "The purpose of ineffectiveness review is not to grade counsel's
performance."  *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing
*Strickland*).  In evaluating counsel's performance, reviewing courts must indulge a
strong presumption that counsel's conduct fell within the wide range of reasonable,
professional assistance.  *Chandler* at 1314.  "Therefore, the cases in which habeas
petitioners can properly prevail on the ground of ineffective assistance of counsel
are few and far between."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

In evaluating the reasonableness of counsel's actions, a court must make
"every effort . . . to eliminate the distorting effects of hindsight" and must evaluate
the reasonableness of counsel's performance "from counsel's perspective at the
time."  *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.  As the Eleventh Circuit has
emphasized:

> We must avoid second-guessing counsel's performance: "[I]t does not
> follow that any counsel who takes an approach we would not have
> chosen is guilty of rendering ineffective assistance."  *Waters* [*v.
> Thomas*, 46 F.3d 1506], 1522 (en banc).  Nor does the fact that a
> particular defense ultimately proved to be unsuccessful demonstrate
> ineffectiveness.  *Chandler* at 1314 (footnote omitted).  Moreover, an
> ambiguous or silent record is not sufficient to disprove the strong and
> continuing presumption of effective representation.  Where the record
> is incomplete or unclear about counsel's actions, it will be presumed

that he did what he should have done, and that he exercised reasonable professional judgment.

*Chandler* at 1314 n.15.

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." 466 U.S. at 693, 104 S.Ct. at 2067. Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 694, 104 S.Ct. at 2068. Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). In applying *Strickland* the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).

B.    **Federal Review of State Court Decision**

The Rule 3.850 court denied relief on this claim as follows:

> Defendant alleges counsel was ineffective for failing to bring to the Court's attention his psychiatric condition. A Defendant who insists on representing himself at trial can not complain that he received ineffective assistance of counsel. *United States v. Roggio*, 863 F.2d 41 (11th Cir. 1989). Defendant also cannot complain that stand-by counsel ineffectively represented him. *See, e.g., Goode v. State*, 403 So.2d 931 (Fla. 1981); *Bundy v. State*, 497 So.2d 1209 (Fla. 1986). Defendant chose to represent himself and could have filed any motion he wanted or brought anything he felt necessary to the Court's attention.

(Ex. F-2, p. 57). It appears that the state court failed to address the central aspect of petitioner's claim – that counsel failed to inform the court about petitioner's

"psychiatric condition" <u>before</u> the court allowed petitioner to represent himself. As there is no state court decision on the merits of this claim, the court will review it *de novo*, without any § 2254(d)(1) deference.

To prevail on this claim, petitioner must show that it was objectively unreasonable for counsel to fail to inform the trial court, for the purpose of the court's *Faretta* inquiry, that petitioner had been diagnosed as clinically depressed and schizophrenic, and that he was on medication. Petitioner must also show there is a reasonable probability that had counsel informed the court of these facts, the result of the proceeding would have been different.

In *Godinez v. Moran*, 509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993), the Supreme Court held that the competency standard for waiving the right to counsel is the same as the competency standard for standing trial: whether the defendant is able to understand the nature and purpose of the proceedings against him and assist in his defense. *Id.* at 396-97; *id.* at 401 n.12. Here, there is no basis in the record for concluding that defense counsel was faced with evidence which could call her client's competency into question. The "facts" of which counsel purportedly was aware are that petitioner was clinically depressed and schizophrenic, and was taking medications to stabilize these conditions. But the fact that petitioner suffered from a mental impairment or disorder does not carry the day; competence centers on whether the accused "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceeding against him." *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995) ("Not every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges.") (internal quotation marks, brackets, and citations omitted). Even a mentally ill defendant may be found competent if he meets this standard. *See Medina*, 59 F.3d at 1107 (stating "neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial."); *cf. Wright v. Secretary for Dep't of Corrections*, 278

F.3d 1245, 1259 (11th Cir. 2002) (stating that "[t]he fact that [petitioner] suffers from chronic schizophrenia the effects of which have come and gone over the years is not enough to create a real, substantial, and legitimate doubt as to whether he was competent to stand trial.").

Petitioner has provided no factual basis to show that his mental conditions and medication affected him to the degree that he was unable to understand the proceedings or make rational decisions regarding his trial.  Indeed, the transcripts of the pre-trial and trial proceedings, including the *Faretta* inquiry, jury selection and trial, indicate that neither the court nor counsel had difficulty in communicating with petitioner; that petitioner behaved in a normal fashion; that petitioner responded rationally to the court's questions and instructions; and that petitioner's words and actions were consistent with his stated understanding of a particular issue or instruction.  (Exs. A-1 through A-4).  Petitioner has presented no evidence that he had any problem understanding the charges against him or communicating with the court or counsel, much less that counsel was aware of such a problem.

On the information petitioner says he provided to counsel, this court cannot conclude that a reasonable attorney would have cause to believe petitioner may be mentally incompetent to stand trial or represent himself.  Thus, this court is unable to conclude that counsel's performance was deficient.  Furthermore, petitioner has failed to establish a reasonable probability had the trial court known of petitioner's alleged mental conditions and medications it would have found him incompetent to represent himself.   In the absence of a showing of deficient performance and prejudice, petitioner is not entitled to relief on this ineffective assistance claim.

J.    "Defendant Denied Due Process Of Law, Fundamental Fairness, And Right To A Fair Trial And Impartial Jury When Court Denied Defendant's Challenge For Cause And Did Abuse Its Discretion, As Well As Defendant's Fifth, Sixth Eight [sic], and Fourteenth Amend. Right And Committed Fundamental And Structural Error."

In this ground for relief, petitioner claims constitutional error in the trial court's denial of a challenge for cause to prospective juror Marshall.  (Doc. 26, pp. 26-27).  He asserts he exhausted this claim by raising it in his Rule 3.850 motion.  Respondent contends this claim is procedurally defaulted.  (Doc. 31, pp. 20-22).

In the Rule 3.850 proceeding, petitioner filed a "supplement" claiming that the trial court violated state law and petitioner's constitutional rights when the court denied petitioner's challenges for cause to several jurors, including juror Marshall and also including jurors Mulligan and Lloyd who had been the subject of a state-law jury selection claim on direct appeal.  (Ex. F-2, pp. 44-45).  The Rule 3.850 court denied relief, stating: "Defendant alleges he was denied due process when the Court denied his challenge for cause during jury selection.  This issue was raised and rejected on direct appeal, and therefore is procedurally barred."  (*Id.*, p. 57).  The appellate court affirmed without written opinion. *Collier v. State*, 924 So.2d 813 (Fla. Dist. Ct. App. 2006) (Table) (copy at Ex. F-1).

The Rule 3.850 court's finding was accurate as to petitioner's state law claims concerning jurors Mulligan and Lloyd –the issue of whether the trial court violated principles of state law when it denied petitioner's challenges for cause to jurors Mulligan and Lloyd had been raised and rejected on direct appeal.  Although a federal constitutional issue had not been raised on direct appeal as to any jurors, this court cannot say that the Rule 3.850 court's imposition of a procedural bar was inadequate to support its denial of the entire claim.  As previously discussed, it is well-settled and a regularly followed practice in Florida that a motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850 cannot be utilized for a second appeal to consider issues that either were raised on direct appeal or could have been raised in that appeal.[9]  *See Harmon v. Barton*, 894 F.2d 1268, 1270 (11th Cir. 1990) (citing *Jones v. State*, 446 So.2d 1059 (Fla. 1984); *McCrae v. State*, 437 So.2d 1388 (Fla. 1983); *Armstrong v. State*, 429 So.2d 287 (Fla. 1983); *Ford v. State*, 407 So.2d 907 (Fla. 1981)).  Petitioner could have raised a constitutional claim concerning jury selection issues on direct appeal but he did not; therefore, presenting such a claim on collateral attack was procedurally barred.  *See Ford v. State, supra* (holding that issue pertaining to jury selection was known at the

---

[9]Rule 3.850 provides in pertinent part: "This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence."  Fla. R. Crim. P. 3.850(c).

conclusion of trial and could have been, but was not, raised on direct appeal; therefore collateral attack through Rule 3.850 motion was not appropriate remedy). The undersigned considers the state court's denial of relief on the broad jury selection claim presented in petitioner's Rule 3.850 supplement to rest on adequate and independent state law procedural grounds.  As the instant claim concerning juror Marshall was part of that broad jury selection claim, it is procedurally defaulted. Petitioner has made none of the requisite showings to excuse his default.  Therefore, this court will not consider the claim on federal habeas review.

> K.      **"Petitioner Denied Due Process Of Law, Equal Protection Of The Law And Fundamental Fairness When The Trial Court Failed To Remain A Neutral Arbiter And Assisted The State Which Was Contrary To And A [sic] Unreasonable Application Of Supreme Court Law   And Was An Abuse Of Discretion And Structural Error."**

In this ground for relief, petitioner contends he was denied due process when the trial court "assisted the state" and thus did not remain neutral.  (Doc. 26, pp. 28-30).  Respondent contends this claim is procedurally defaulted.  (Doc. 31, p. 22). Respondent is correct.

Petitioner raised this issue in his Rule 3.850 motion.  The state court ruled the claim was procedurally barred because the issue could and should have been raised on direct appeal but was not. (Ex. F-2, p. 56).  The appellate court affirmed the denial order without written opinion.  *Collier v. State*, 924 So.2d 813 (Fla. Dist. Ct. App. 2006) (Table) (copy at Ex. F-1).  The state court relied on the procedural bar as an independent basis for its decision.  The procedural bar is an adequate ground for the state court's denial of relief, because it is firmly established and regularly followed in cases such as petitioner's.  *Bell v. State, supra*; *Teffeteller v. State, supra*; *Koon v. Dugger, supra*; *Smith v. State, supra*.  This court therefore considers the claim procedurally defaulted.  Petitioner has made none of the requisite showings to excuse the default.  Thus, this court will not consider the merits of the claim on federal habeas review.

> Ground L.      **"Defendant Was Denied Due Process Of Law And His Right To A Fair And Impartial Jury When Court Denied Defendant's Challenge For Cause And Abused Its Descreation [sic] And Did So Violate Defendant's Fifth, Sixth, Eighth And Fourteenth**

**Amendments Thereby Committing Fundamental And Structural Error."**

In this ground for relief petitioner goes through a lengthy description of questions and answers that arose during jury selection, as well as a record of which challenges for cause were successful and which were not. (Doc. 26, pp. 31-37). All told, it appears that the gist of petitioner's claim is that the trial court "unfairly and intentionally" forced petitioner to use peremptory challenges to strike jurors who should have been stricken for cause. (*Id.*, p. 35). According to petitioner, this denied him a fair trial because had he not been forced to expend peremptory challenges to cure the trial court's improper denial of for-cause challenges, he would have been able to strike four biased jurors who actually served. (*Id.*, pp. 35-36).[10] Respondent asserts this claim is procedurally defaulted, and in any event does not state a claim cognizable on federal habeas. (Doc. 31, pp. 23-25).

The analysis applied to Ground J, *supra*, applies here. Petitioner raised this issue as part of the broad jury selection claim presented in the supplement to his Rule 3.850 motion. (Ex. F-2, pp. 40-46). The Rule 3.850 court declined to reach the merits, finding the claim procedurally barred. The procedural bar represents an adequate and independent state-law ground for the state court's decision. Therefore, this court  considers the claim procedurally defaulted. Petitioner has made none of the requisite showings to excuse the default. Thus, it will not be considered on federal habeas review.

**Ground M.**    **"Trial Court Abused Its Discretion When It Refused To Excuse Juror For Cause Under Challenge By Defendant.  Doing So Deprived Defendant Of A Fair And Impartial Jury Which Is Contrary To And Was An Unreasonable Application Of Supreme Court Precedent And Structural And Fundamental Error."**

Petitioner challenges the trial court's failure to remove jurors Lloyd and McCrary for cause. He asserts he exhausted this claim by raising it in the Rule 3.850

---

[10]The jurors who actually sat were Johnson, Lee, Randall, McCrary, Lloyd, Marshall and Renfroe (alternate).  (Ex. A-2, p. 69).  Petitioner contends Lee, McCrary, Lloyd and Marshall were biased.  (Doc. 26, p. 35).

proceeding.  (Doc. 26, pp. 38-39).  Respondent asserts this claim is procedurally defaulted and, in any event, without merit.  (Doc. 31, pp. 25-26).

On direct appeal, petitioner challenged the trial court's failure to strike juror Lloyd for cause, arguing state law principles.  The state appellate court denied the claim on the merits.  (Ex. E).  Later, in the Rule 3.850 proceeding, petitioner raised this issue as part of the broad jury selection claim presented in his supplement, arguing that the trial court violated state law and petitioner's constitutional rights.  (Ex. F-2, pp. 40-46). The state court denied relief, finding the claim procedurally barred.

To the extent petitioner now seeks federal habeas review of the state court's denial of relief on the claim presented on direct appeal, such claim is not cognizable on federal habeas corpus, as this court does not sit to review alleged errors of state law.  To the extent petitioner seeks federal habeas review of the federal aspects of the jury selection claim raised in his Rule 3.850 supplement, this claim is procedurally defaulted.  *See* discussion of Grounds J and L, *supra*.  Petitioner has made none of the requisite showings to excuse his default.  Therefore, this court will not consider the claim on federal habeas review.

N.  <u>"Petitioner Contends That The Prosecution Withheld Favorable Exculpatory Evidence, Which It Knew Would Bolster The Defense Case And Possibly Produce A Finding Of Not Guilty By Jury If It Heard The State's Key Material Witness Testimony But Did Not Due To The Prosecutor's Abuse Of Due Process, Violation Of Brady Precedent, Violation Of The Right To Due Process Clause And Denied Petitioner The Right To Present A Complete Defense Which Was Contrary And Was An Unreasonable Application To Supreme Law."</u>

In his last ground for relief, petitioner claims he has more newly discovered evidence of his innocence of the crime of escape.  At trial the State presented evidence that on June 7, 2001, petitioner was in custody awaiting sentencing on the lewd and lascivious battery conviction.  Petitioner was representing himself in the lewd battery case, and had obtained permission from the trial judge to use the law library at the Bay County Courthouse to prepare for the sentencing hearing.  He had been escorted to the law library by two Corrections Corporation of America officers: Stan Heaton and Timothy Stage.  Officer Heaton testified that once at the library,

petitioner convinced him to remove the handcuffs and belly chain so that he could more easily pull books and take notes.  As it approached the time for petitioner to be taken back to the Jail, petitioner asked Heaton if he could use the restroom.  Officer Heaton escorted petitioner to the restroom and returned to the law library to begin putting petitioner's books away.  In the meantime, petitioner escaped down a back stairwell.  (Ex. A-3, pp.22-48).  Although both officers gave statements to law enforcement, Officer Stage did not testify at trial because he was unavailable.  (Ex. A-2, p. 82).

In support of his present claim of newly discovered evidence, petitioner asserts that at trial he attempted during cross-examination of a prosecution witness, to introduce "information about the fact that [Stage] who was not present for trial, did not agree with the events and testimony of Stan Heaton."  (Doc. 26, p. 40).  According to petitioner, the prosecutor objected on the grounds that Mr. Stage was not present and had been called up for military duty.  Petitioner asserts that on January 5, 2006 he "collected" what he purports to be an affidavit of Mr. Stage dated January 5, 2006.   The affidavit states as follows:

> Collier was set up.  He was let go I believe by the chief and had R/S Heaton do it.  I had overheard Chief Michael Thompkins tell Chief Collier this was his last chance.  I told this to the state attorney and was told I wasn't needed for trial by prosecutor Smoak.  I also informed Collier had something in a brown bag I now know was clothing.

(Doc. 26, Ex. O).  Petitioner claims the prosecution withheld Stage's statement in violation of *Brady*, and that this prejudiced petitioner because the statement could have been used to show that petitioner did not escape "or in some other strategic useage [sic]."   Respondent apparently did not read the substance of this claim, because his response characterizes the issue as one concerning the victim's recantation in the lewd battery case.  (Doc. 31, p. 29).

The record reveals that petitioner has not presented this claim of newly discovered evidence to the state court.  As two years have elapsed from the date upon which the evidence was or could have been discovered through the use of due diligence, any present attempt to return to state court to present the claim in a Rule 3.850 motion would be time-barred.  *See* Fla. R. Crim. P. 3.850(b); *Parks v. State*, 944

So.2d 1230, 1231 (Fla. Dist. Ct. App. 2006).   The claim is therefore procedurally defaulted.  Petitioner has made none of the requisite showings to excuse the default. The affidavit purportedly made by Mr. Stage does not present new reliable evidence of petitioner's actual innocence.  Even assuming Officer Stage actually signed the affidavit, his opinion that petitioner was set up is irrelevant.  Furthermore, the facts supporting Stage's opinion that petitioner was set up are that he overheard Chief Michael Tomkins tell petitioner "this was his last chance."  However, these facts are nothing new, because at trial petitioner cross-examined Officer Heaton on Tomkins' statement:

> Q [Petitioner].  And do you recall what you said the chief had instructed you of as far as telling him that this was the last time, did Tomkins make that statement to you?
>
> A [Stan Heaton].  That this was the last time that you were going to go to the law library?  Yes.
>
> Q.  Didn't he also instruct you and say to tell him he got to do it this time?  To tell him he had to do it this time?
>
> A.  You mean get all your work completed?
>
> Q. I mean, did Mr. Tomkins tell you verbatim, tell him he need to go this time, he won't get another chance?
>
> A.  Yes.
>
> Q.  He told you that?
>
> A.  Well, it was tell Mr. Collier he needs to get what he needs to get done this time, it was said like that.  I don't remember it word for word but it was made clear to me that to, it was made clear to me to let you know that this would be your last opportunity to go to the law library before your court date, that's what I mean.

(Ex. A-4, pp. 32-33).  As the foregoing demonstrates, Stage's statement concerning what he overheard Chief Tomkins say to Heaton is neither new evidence nor evidence of petitioner's actual innocence.  Petitioner is not entitled to federal habeas relief on this claim.

## CONCLUSION

A number of petitioner's grounds for relief are procedurally defaulted. Petitioner has made none of the requisite showings to excuse his default. Those claims that are not procedurally defaulted do not warrant federal habeas relief.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect that Walter A. McNeil has been substituted as respondent in this cause.

And it is respectfully RECOMMENDED:

That the second amended petition for writ of habeas corpus (doc. 26) challenging the conviction and sentence in *State of Florida v. Tracy Collier*, in the Circuit Court of Bay County, Florida, case number 01-1454, be DENIED and the clerk be directed to close the file.

At Pensacola, Florida this 30th day of April, 2008.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).